**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0057n.06

No.  09-3407

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 27, 2011**
LEONARD GREEN, Clerk

LUKE NUE,

     Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General

     Respondent.

ON PETITION FOR REVIEW
FROM AN ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

_____ /

Before:     MARTIN and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

THOMAS L. LUDINGTON, District Judge.  Petitioner, Luke Nue ("Nue") contends that the

Board of Immigration Appeals ("BIA") erred in affirming the immigration judge's decision denying

Nue's application for asylum under 8 U.S.C. § 1158 (2006) and rejecting her separate claim that she

qualifies for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) (2006).  The BIA found that

Nue's circumstances did not warrant a rebuttable presumption of future persecution based on past

persecution and that Nue's fear of future persecution was not well-founded because a fundamental

change in circumstances had occurred in Serbia. We **AFFIRM**.

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District
of Michigan, sitting by designation.

## I.

Nue originally left Kosovo in 1998 because of the war between Kosovo and the former Yugoslavia, during which Serbians sought to cleanse Kosovo of ethnic Kosovar-Albanians. A native and citizen of the former Yugoslavia, Nue considers herself a Kosovar-Albanian. Nue's second husband, Pjeter Preqaj, an ethnic Albanian, disappeared during the crisis in Kosovo while traveling between Nue's village and the neighboring town of Gramaqel in May 1998. Following her husband's disappearance, Nue searched the road to Gramaqel but found no trace of him or his traveling companion. Nue inquired into the whereabouts of her husband for approximately two months, but was unable to locate him. Nue believes that the Serbian army abducted and killed her husband despite a lack of witnesses to Pjeter's disappearance.

When the main Serbian offensive began in June 1998, Nue and her family were forced to hide from the Serbian forces in a garage. After many days, Serbian forces attacked and set fire to the garage. This forced Nue to flee first to her house and then to her mother's house in Gjakova. The Serbian troops soon attacked that city as well. Nue alleges she was constantly harassed and threatened by Serbian troops while they occupied Gjakova. It was during this time that Nue also alleges that Serbian troops entered her mother's home, threatened them at gunpoint to leave the area, and then raped Nue in front of her mother.

After the North Atlantic Treaty Organization ("NATO") bombings of Serbian positions, the violence between the Serbian troops and the Kosovar-Albanians, who the Serbian troops blamed for the bombings, escalated. Nue alleges that after the NATO bombings, Serbian troops threw knives at her and her mother without cause. Despite the threat of violence, Nue was secretly supporting the

Kosovo Liberation Army ("KLA") forces around Gjakova, and at one point was confronted by Serbian forces on her return from a KLA base. Nue was held at gunpoint while her mother, an ethnic Serbian, pled with the troops to spare Nue's life.

When the war ended, Nue returned to her home only to find it destroyed. At this time, Nue also alleges she faced persecution by the KLA who accused her of being a Serbian sympathizer based on her partial Serbian ethnicity. On one occasion, KLA soldiers came heavily armed to her mother's home, where Nue was residing, and lined up her family, holding them at gunpoint and accusing them of hiding Serbians. This detention lasted approximately fifteen minutes while the KLA troops searched Nue's mother's home.

Nue subsequently obtained a tourist visa, entered the United States in March 2002, and sought asylum in September of the same year. In her asylum application, Nue alleged that she feared persecution in Kosovo and Serbia by Albanian zealots on account of her mixed Serbian-Albanian ethnicity and Catholic religion. Nue alleged that members of the KLA repeatedly accused her and her family of being terrorists, confronted her at her home regarding the accusations, and that her brother had been detained and interrogated by KLA members in August 2002. Her brother, who remained in Kosovo, informed her that he had been harassed and verbally threatened by KLA members and Albanian extremists who were allegedly aware of their family's mixed ethnicity. Nue stated her fear of persecution as a non-Muslim was justified because Catholic churches had been damaged in the war and discrimination against non-Muslims persisted.

The Department of Homeland Security reviewed Nue's asylum claim and issued a letter on October 4, 2004, informing her that her asylum application would be referred to an immigration judge because she did not demonstrate that any harm she had suffered rose to the level of persecution

or that her fear of future persecution was well-founded. Nue advanced two grounds for her request for relief and protection in her subsequent affidavits, testimony, and other evidence in support of her application. First, Nue alleged a fear of harm by the Serbian military on account of her Albanian ethnicity, and second, she claimed a fear of harm by Albanian extremists on account of her Serbian ethnicity.

In 2006, the United States Department of State Country Reports on Human Rights Practices (hereinafter "State Department Country Reports") noted that there were no reports that "the government or its agents committed arbitrary or unlawful killings" and that many displaced Serbians and Albanians had begun returning to Kosovo and Serbia. Reports of discrimination, violence, and crimes directed at minorities and their properties have decreased since 2005, but official and societal discrimination still persist. The international police unit[1] has also made efforts to investigate reports of violence against Kosovo-Serbians. Additionally, Nue's mother and two brothers returned to Kosovo after the war and have resided there for years unharmed.

An immigration judge denied Nue's application for relief and protection on April 19, 2007, concluding that Nue did not testify credibly in support of her claims and did not demonstrate that she had been persecuted in the past. The immigration judge held alternatively that, even if Nue had credibly established past persecution, she was ineligible for asylum because the circumstances in Kosovo had changed, reducing the basis for Nue's fear of persecution on account of her ethnicity or any other protected ground. The immigration judge noted that, according to the State Department Country Reports' profile and other record evidence, the war ended after NATO's intervention and

---

[1]According to the 2006 State Department Country Reports, the international police unit is a unit composed of United Nations international police officers within the Kosovo Protection Service that reports directly to the police commissioner who is also an international staff member.

-4-

the country's administration was placed under NATO's control. Furthermore, many displaced persons had returned to Kosovo, indicating that internal relocation was feasible and that, despite continuing ethnic problems and discrimination in Kosovo, there was no longer persecution of ethnic Albanians, Serbians, or Catholics. The immigration judge also took into account Nue's mother and two brothers' return to Kosovo without harm and found that, as a former KLA supporter, Kosovar-Albanians would likely welcome Nue's return. Nue was also ineligible for CAT protection because, even though rape could be viewed as torture, the immigration judge found that Nue had not credibly shown that she was the victim of rape or that there was a clear probability that she would be tortured by, or with the acquiescence of, the Serbian government upon returning to Kosovo or Serbia.

On May 16, 2007, Nue appealed the immigration judge's decision alleging that he erred in finding that Nue did not demonstrate past persecution on account of her Albanian ethnicity and that she did not testify credibly in support of her claims. Nue contended that the immigration judge erred in finding that her past harm was not on account of a protected ground. She also contended that the immigration judge erred in finding that the State Department Country Reports rebutted her presumption of a well-founded fear of future persecution based on her Serbian ethnicity because there was a pattern and practice of persecution by Kosovar-Albanians against Serbians. Additionally, Nue alleged that she qualified for withholding of removal because there was a clear probability that she would be persecuted upon returning to Serbia. Nue did not appeal the immigration judge's denial of her CAT claim, or his finding that she did not have a well-founded fear of persecution on account of her Albanian ethnicity.

The BIA denied Nue's appeal on March 12, 2009. The BIA denied Nue's claim that she had a well-founded fear of future persecution by Albanian forces because of her Serbian ethnicity. The BIA found that Nue had not established that the search by and threats received from KLA members rose to the level of persecution, that she was persecuted on account of her Serbian ethnicity, or that her circumstances warranted a rebuttable presumption of future persecution. The BIA also adopted and affirmed the immigration judge's alternative finding that any presumption of a well-founded fear of persecution by the Serbian forces was rebutted by a "fundamental change in circumstances" which had occurred in Serbia. It noted that the war had ended and Nue's Serbian mother and brothers returned to Kosovo and remained there unharmed. The BIA did not reach the issue of Nue's credibility. Nue then sought timely review.

## II.

In the instant case, the BIA reviewed the immigration judge's decision and issued an opinion by a single-member panel pursuant to 8 C.F.R. § 1003.1(e) (2010). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the Court] review[s] the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). This Court also reviews immigration judges' decisions to the extent their reasoning is adopted by the BIA. *Id.*; *see Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations. *Morgan*, 507 F.3d at 1057 (*citing Sad v. I.N.S.*, 246 F.3d 811, 814 (6th Cir. 2001)).

The BIA and immigration judge's findings are reviewed under the substantial evidence standard. *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). The Court's scope of review of factual findings under the substantial evidence standard is narrow. *See Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.' " *Id.* (quoting *Sad*, 246 F.3d at 815). The Court may not reverse such findings simply because it would have decided the case differently. *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). Stated otherwise, the BIA's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**III.**

Nue raises three arguments regarding the BIA's error in affirming the immigration judge.[2] First, that the BIA erred in determining that Nue does not have a credible and well-founded fear of persecution or faced past persecution based on her status as a non-pure Kosovar-Albanian in order to be eligible for asylum. Second, and within the context of the asylum request, that the BIA erred in determining that country conditions within Kosovo had changed to the point that Nue could not have a credible fear of return, rebutting any presumption of future persecution. Third, that the immigration judge erred in determining that she did not qualify for withholding of removal.

**A.**

---

[2] Nue raises an additional argument in her brief that the BIA did not apply the correct legal standard in finding Nue's testimony incredible. The BIA expressly did not reach the issue of Nue's credibility, but instead adopted the immigration judge's alternate finding that even if Nue had established that she was persecuted by Serbian forces in the past, the presumption of a well-founded fear of persecution has been rebutted by showing that there has been a "fundamental change in circumstances" since Nue left her country in 2002. (App'x at 1.)

The Attorney General has discretion to grant an alien asylum if the alien is a refugee. *Id.* § 1158(b)(1); *see I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 428 & n.5 (1987). A "refugee" is defined as an alien who is unable or unwilling to return to her country of origin "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Pascual v. Mukasey*, 514 F.3d 483, 485 (6th Cir. 2007). An applicant can be found eligible for asylum based solely on past persecution; however, the Attorney General will generally not grant asylum as a matter of discretion unless the applicant also demonstrates that her fear of future persecution is well-founded. *Matter of N-M-A-*, 22 I. & N. Dec. 312, 318 (BIA 1998) (noting that "the determination that an applicant may not be subjected to future persecution may well result in the denial of relief"); *see also Cardoza-Fonseca*, 480 U.S. at 428 n.5. This is because "[a]sylum is a prophylactic protection for those who might face future persecution . . . [and] is designed not to remedy the past, but to protect those who might suffer future persecution." *Matter of N-M-A-*, 22 I. & N. Dec. at 318.

To establish past persecution, an applicant must show that she has been subjected to "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998) (citation and quotation omitted); *see* 8 C.F.R. § 1208.13(a) (2010). An applicant who establishes past persecution on account of a protected ground is entitled to a presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). The past-persecution presumption regulation has been found to apply only where the applicant is claiming past and future persecution from the same source for the same motive. *Matter of N-M-A-*,

22 I. & N. Dec. at 318. "The rationale for looking at past persecution is that the 'past serves as an evidentiary proxy for the future.'" *Id.* (quoting *Marquez v. I.N.S.*, 105 F.3d 374, 379 (7th Cir. 1997)). "The presumption is based on the possibility that a persecutor, once having shown an interest in harming the applicant, might seek to harm the applicant again should the applicant be forced to return within the persecutor's reach." *Id.* at 317-18.

The government can rebut this presumption if it establishes by a preponderance of the evidence that a "fundamental change in circumstances" has undermined any such "well-founded fear." 8 C.F.R. § 1208.13(b)(1)(i)(A); *see Pascual*, 514 F.3d at 485-86. In other words,

> if the record reflects that country conditions relating to the past persecution have changed to such an extent that the applicant no longer has a well-founded fear of harm from [her] original source of persecution, the evidentiary presumption is extinguished, and the burden returns to the applicant to establish [her] well-founded fear of persecution from any new source.

*Matter of N-M-A-*, 22 I. & N. Dec. at 317-318. Therefore, an alien may alternatively establish that her fear of future persecution is well-founded, independent of the presumption, by showing: (1) a fear of persecution in her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) a reasonable possibility of suffering such persecution if she were to return to that country; and (3) an inability or unwillingness to return to that country because of such fear. *Mikhailevitch*, 146 F.3d at 389; 8 C.F.R. § 1208.13(b)(2); *see also Perkovic v. I.N.S.*, 33 F.3d 615, 620-21 (6th Cir. 1994) (requiring a well-founded fear of persecution to be subjectively genuine and objectively reasonable).

Nue contends that she has a credible, well-founded fear of persecution because she is considered a non-pure Kosovar-Albanian and offers her family's experiences as corroborative of her own fear of persecution. *Cf. Matter of Villalta*, 10 I. & N. Dec. 142 (BIA 1990); *cf. also Cerda-*

*Obando* v. *I.N.S.*, No. 94-70589, 1996 WL 119480, at \*1 (9th Cir. Mar. 12, 1996) ("Threats and acts of violence against an applicant's family members sufficiently demonstrate that the applicant has a well-founded fear of persecution."); *Arriaga-Barrientos v. I.N.S.*, 938 F.2d 411, 414 (9th Cir. 1991) ("We have held that acts of violence against a petitioner's friends or family members may establish a well-founded fear, notwithstanding an utter lack of persecution against the petitioner herself."). In order to establish a well-founded fear of persecution, an applicant need only demonstrate that future persecution is "a reasonable possibility." *Cardoza-Fonseca*, 480 U.S. at 440 (quoting *I.N.S. v. Stevic*, 467 U.S. 407, 424-25 (1984)). This standard is lower than the preponderance of the evidence test because the applicant "need not prove that it is more likely than not that . . . she will be persecuted in . . . her home country." *Id.* at 449. Instead, by pointing to specific, objective facts that give rise to the inference that she has been–or facts that demonstrate good reason to believe she will be–singled out for persecution, the applicant qualifies for asylum. *Carvajal-Munoz v. I.N.S.*, 734 F.2d 562, 574 (7th Cir. 1984); *see also Cardoza-Fonseca*, 480 U.S. at 425.

### 1.

Nue asserts that she meets this test. Nue claims that because she and her family endured past persecution by the Albanian majority after the war, there is no reason to believe she will not be persecuted on account of being perceived as a Serbian by the Kosovar population in the future now that the Serbians are no longer in control. When violence rises to the level of past persecution, as Nue asserts is the case here, there is a presumption of future persecution. 8 C.F.R. § 208.13(b)(1)(I); *Angoucheva v. I.N.S.*, 106 F.3d 781, 788 (7th Cir. 1997). To overcome this presumption, it must be established by a preponderance of the evidence that, since the time of persecution occurred, conditions in Kosovo "have changed to such an extent that the applicant no longer has a well-

-10-

founded fear of being persecuted if he or she were to return." 8 C.F.R. § 208.13(b)(1)(i)(A); *see also Angoucheva*, 106 F.3d at 788. Nue contends that the government cannot meet this burden. According to Nue, there is no compelling evidence that conditions in Kosovo have improved, particularly with regard to relations between Serbians and Albanians, and concerning the United Nation's ability to successfully control and monitor the situation there.

Nue further contends that even if she had not been singled out for persecution in the past, she still satisfies the test for a well-founded fear of future persecution in Kosovo based on her Serbian ethnicity. An applicant establishes refugee status if she shows that a reasonable person in her position would fear persecution upon return to her country. *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 445 (BIA 1987). Nue asserts that animosity still exists between the Serbians and Kosovar-Albanians within Kosovo, making it reasonable for a person in her circumstances to fear returning to Kosovo. However, to demonstrate more than animosity between the Serbians and ethnic Albanians, Nue must demonstrate that (1) she possesses a belief or characteristic a persecutor seeks to overcome by punishment; (2) the persecutor is or could become aware that she possess the belief or characteristic; (3) the persecutor has the capability to punish her; and (4) the persecutor has the inclination to punish her. *Id.* at 446.

In asylum cases, the burden of proof does not require that the applicant demonstrate that she was singled out individually for persecution if there is a "pattern and practice" of persecution of people "similarly situated to the applicant." 8 C.F.R. § 208.13(b)(1)(I); *see also Avetova-Elisseva v. I.N.S.*, 213 F.3d 1192 (9th Cir. 2000). Nue contends that such a "pattern and practice" clearly exists against the Serbian minority in Kosovo, and that her Serbian ethnicity is readily ascertainable through questioning about her lineage. *Cf. In re H--*, 21 I. & N. Dec. 337, 343 (BIA 1996) (noting

-11-

that family lineage and membership may be readily discernible by others because of particular characteristics, such as language). Nue stated in her August 2006 affidavit that her aunt had been murdered by unknown parties in Kosovo, allegedly because of the aunt's Serbian ethnicity, and that her mother had been threatened at gunpoint by KLA forces after NATO's intervention. In cases where family members share the characteristics that lead to the persecution, violence against relatives may constitute the most probative evidence that a fear of persecution is well-founded. *See* Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees (Geneva 1992) ¶ 43 (stating that considerations of well-founded fear "need not necessarily be based on the applicant's own personal experience"). Given that her family has faced persecution because of their Serbian ethnicity, Nue contends that the immigration judge erred in determining that Nue does not have a credible and well-founded fear of future persecution based on her status as a non-pure Kosovar Albanian.

The government contends that Nue's experience with the KLA or Albanian extremists did not rise to the level of persecution. Persecution entails harm that is more severe than "harassment or discrimination without physical punishment, infliction of harm, or significant deprivation of liberty." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). Although Nue indicated that the KLA searched her mother's home for harbored Serbians for approximately fifteen minutes while holding her family at gunpoint, Nue also testified that she had encountered no problems with the KLA on account of her Serbian ethnicity. Likewise, Nue contends that her Serbian aunt was killed by Albanian extremists or the KLA, but she has offered no evidence to prove that the aunt was actually her relative or how the aunt was killed. *Compare* A.R. 748, 772 (affidavits suggesting that

the "aunt" is not Nue's relative), *with* A.R. 593 (testimony that Nue did not see the shooting but had heard that her brother's mother-in-law had been killed).

Based on her own testimony and the past occurrences with the KLA, Nue has not demonstrated past persecution with regard to the KLA or Albanian extremists. Accordingly, she is not entitled to a presumption that there is a reasonable possibility of future persecution upon her return to Kosovo. This requires Nue to show that her fear of persecution because of her non-pure Kosovar Albanian ethnicity is subjectively genuine and objectively reasonable. *Perkovic*, 33 F.3d at 620-21; *see Mikhailevitch*, 146 F.3d at 389 (requiring an applicant who has not shown past persecution to independently show that their fear of future persecution is well founded). Nue did not meet this burden for two reasons. First, Nue's mother and brothers have safely returned to Kosovo and lived there unharmed for years, which directly rebuts her fear of persecution. *See Gumbol v. I.N.S.*, 815 F.2d 406, 413 (6th Cir. 1987) (finding the continued and unharmed residence of similarly-situated family members in the country of removal a factor weighing against a finding of a well-founded fear of future persecution); A.R. 433, 537-38. Second, the 2006 State Department Country Reports indicate that there have been no reports of arbitrary or unlawful killings by the government or its agents, and that many displaced Serbians and Albanians have returned to Kosovo. A.R. 705, 712, 729-30, 736. The international police have also made efforts to curb and investigate violence against ethnic Serbians. *Id.* The discrimination and harassment that Nue experienced does not demonstrate that she has a well-founded fear of persecution by rogue Albanian extremists or persons who the government is unable or unwilling to control. *See Mohammed*, 507 F.3d at 371. As a result, the evidence presented by Nue does not compel the Court to reach a conclusion contrary the BIA's

decision to deny asylum or withholding of removal. *See Hamida*, 478 F.3d at 741 (requiring a more strict standard for withholding of removal than that needed for asylum); *Gishta*, 404 F.3d at 978.

Furthermore, in seeking relief and protection Nue intertwines two different claims of fear of persecution by two different persecutors with two separate motives. A.R. 744-49, 768-72. However, past persecution by the Serbian military on account of her Kosovar-Albanian ethnicity does not lend a presumption that her fear of harm by Albanian extremists on account of her Serbian ethnicity is well-founded, and the two dissociated claims cannot be combined to create a claim of past persecution. *See* 8 C.F.R. § 1208.13(b)(1) (providing that where a fear of future persecution is dissociated to the past persecution, the applicant bears the burden to prove that the fear of future persecution is well-founded).

Although record evidence demonstrates that there are ongoing incidents of harassment and discrimination of Serbians in Kosovo, this does not compel a finding of a well-founded fear of persecution in Kosovo because of Nue's Serbian ethnicity. *Cf. Mohammed*, 507 F.3d at 371 (finding that persecution encompasses more than harassment or discrimination). Because Nue has not demonstrated past persecution or a well-founded fear of future persecution, she has not shown that the BIA's denial of her asylum application and withholding of removal was arbitrary, capricious, or manifestly contrary to the statute.

**2.**

Even if Nue were able to establish past persecution, she remains ineligible for asylum based on the BIA's finding that the government rebutted any presumption of a well-founded fear of future persecution because there has been a fundamental change in circumstances. Nue, however, contends that the BIA erred in agreeing with the immigration judge on this issue. Nue alleges that there has

been a recent deterioration of the situation in Kosovo between the majority Albanians and the minority Serbian populations with which Nue claims she identifies,[3] but provides no evidentiary support for this contention.

Nue also argues that the State Department Country Reports are not precedential in their pronouncements and the BIA erred in its reliance on the 2006 State Department Country Reports in coming to the conclusion that conditions in Kosovo had improved to the point where Nue has no credible fear of persecution. Additionally, "[i]t stands to reason that a report produced by one executive department to aid the litigation of another executive department would often support the second department's point of view." *Koliada v. I.N.S.*, 259 F.3d 482, 487 (6th Cir. 2001) (discussing a profile produced by the State Department specifically for the Immigration and Naturalization Service for trial). "[T]he [State Department] reports are brief and general, and may fail to identify specific, perhaps local, dangers to particular, perhaps obscure, individuals." *Galina v. I.N.S.*, 213 F.3d 955, 959 (7th Cir. 2000). Nue alleges that the State Department Country Reports offer the Court a point of reference in determining reasonableness of fear of future persecution–nothing more–and the conclusions should not be deemed unassailable. Nue offers the conclusion that substantial evidence exists to support the proposition that Nue, as a recognizable Serbian, would face continued persecution if returned to Kosovo. However, Nue has not provided such substantial evidence.

Despite this, Nue contends that a "[m]ere reliance" on a few passages in the State Department Country Reports identifying "modest improvements in the still unsettled territory cannot be assumed

---

[3]Nue directly contradicts herself, however, as she stated earlier in her brief that she identifies herself as a Kosovar-Albanian, and not as a minority Serbian.

to trump the body of evidence presented to the contrary." (Pet'r's Br. at 33.) However, the BIA also relied on Nue's similarly situated mother and two brothers who have returned to Kosovo and resided there over the past three years without harm. A.R. 618-2, 623-24; *cf. Gumbol*, 815 F.2d at 413 (finding that the continued and unharmed residence of similarly-situated family members in the country of removal a factor weighing against a finding of a well-founded fear of future persecution).

This Court has found that State Department Country Reports can be used to overcome a presumption of future persecution by showing a fundamental change in country conditions, which forecloses Nue's claim that the BIA and the immigration judge erred by relying on the 2006 State Department Country Reports. *See Mullai v. Ashcroft*, 385 F.3d 634, 639 (6th Cir. 2004). The BIA also did not rely solely upon the 2006 State Department Country Reports to refute Nue's claim. Consequently, Nue has not demonstrated that the BIA erred in finding that country conditions in Kosovo have changed to the point that Nue would not have a credible fear of persecution upon her return.

**B.**

The standard for establishing eligibility for withholding of removal is more stringent than that needed for asylum. 8 U.S.C. §§ 1231(b)(3)(A), 1253(h); *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005). The alien must demonstrate "that there is a clear probability that [she] will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (citation and quotation omitted). Because Nue has not met the requirements for the more lenient standard of asylum eligibility, she cannot meet the more stringent standard required for withholding of removal eligibility .

**IV.**

-16-

The record in the instant case does not compel a contrary conclusion, and we find that the immigration judge's decision was supported by substantial evidence. Accordingly, the Board of Immigration Appeal's decision is **AFFIRMED**.