NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0627n.06

No. 11-3006

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 15, 2012*

LEONARD GREEN, Clerk

OSVALDO GOMEZ-GUZMAN, )
)
    Petitioner, )
)
v. )
)
ERIC H. HOLDER, JR., Attorney )
General, )
)
    Respondent. )

ON APPEAL FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

**OPINION**

_____

Before: WHITE, STRANCH, and FARRIS[*], Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Osvaldo Gomez-Guzman ("Gomez") seeks review of a Board of Immigration Appeals ("BIA") order denying his application for asylum. We **AFFIRM**.

**I.**

Gomez was born in 1989 in San Martin, Sacatepequez, Guatemala.[1] A year later, Gomez and his mother moved to Concepcion, Chiquirichapa, Guatemala, where they lived with Gomez's stepfather and four half-siblings. Because the family needed money, when Gomez was eleven years-old, Gomez's stepfather forced him to quit school and start working in construction. In that job, he mixed cement, loaded blocks of cement, climbed on roofs, and did any other work his employer

_____

[*]The Honorable Jerome Farris, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[1]The facts are taken from a merits hearing conducted before an immigration judge ("IJ") on February 3, 2009. Gomez, appearing with counsel, testified at the hearing through the use of an interpreter.

wanted. It took Gomez between thirty and forty-five minutes to walk to work each day, and he usually worked from 7:00 a.m. to 4:30 p.m., six or seven days a week.

He testified that the work was dangerous and that he once hurt his forearm while working, but he still went to work the next day. If he did not go to work, his stepfather would beat him or withhold food. On one occasion, his stepfather beat him so badly that he could not breathe or go to work the next day. For the work Gomez performed, his employer paid the equivalent of $2 to $3 per day directly to Gomez's stepfather. Gomez testified that he had no free time or friends because he was required to do additional housework once he got home, and he was unable to run away because he never had the opportunity. His half-siblings did not work because they were "very little" then.

When he was seventeen, Gomez discovered he had an uncle in San Martin and went to live with him. During the time he lived there, his uncle treated him well and did not make him work. Because the house was too small and his uncle had children, Gomez could not live with his uncle permanently. Nor could Gomez live on his own as an adult because, according to his testimony, he had no family or home, and he did not make enough money. While living with his uncle, Gomez discovered that he had additional siblings. One brother, Adrian, who lives in the United States, paid for Gomez to cross the border. Gomez testified that if he went back to Guatemala, he could potentially earn around fifty quetzals[2] per day, but that he was not certain. Gomez also explained that he was afraid to return to Guatemala because gangs assume that people from the United States have money and might harm him and, further, that he has "nothing to go back to."

---

[2]Based on our research, fifty quetzals would be the approximate equivalent of $6.43 in U.S. dollars today. *See http://www.xe.com/ucc/convert/?Amount=50&From=GTQ&To =USD* (last visited April 17, 2012).

Gomez entered the United States without inspection around September 16, 2007 near Naco, Arizona, and he was apprehended by a border patrol agent on September 20, 2007. The Department of Homeland Security initiated removal proceedings against him on September 22, 2007. On August 4, 2008, he conceded removability. On September 8, 2008, he applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and protection under the Convention Against Torture ("CAT").

At the merits hearing, Gomez's counsel conceded that Gomez no longer maintained a fear of future persecution and withdrew the withholding of removal and CAT claims. He nevertheless argued that he was subject to past persecution on account of his membership in a particular social group: Guatemalan children under age fourteen. Accordingly, Gomez asserted that he remained eligible for asylum pursuant to *Matter of Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989), due to the severity of the persecution he experienced and the possibility of future harm.

In an oral decision, the IJ noted that Gomez was credible and sympathetic. The IJ nevertheless denied the application because Guatemalan children under fourteen is not a particular social group cognizable under the INA. Gomez appealed to the BIA, which affirmed the IJ's decision. Gomez timely petitioned this court for review.

## II.

"Because the BIA adopted and supplemented the IJ's decision, [this court] review[s] the opinion of the IJ in conjunction with the BIA's additional comments and discussion." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010) (citation omitted). "Questions of law are reviewed de novo," and factual findings are conclusive unless a reasonable adjudicator would be "compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

Generally, the BIA's interpretation of the INA will be upheld unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.*

When considering an application for asylum, this court asks two questions: (1) whether the applicant qualifies as a refugee as defined in 8 U.S.C. § 1101(a)(42)(A); and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General. *Cruz-Samayoa*, 607 F.3d at 1150 (citation and internal quotation marks omitted). A "refugee" is a person who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Abdurakhmanov v. Holder*, 666 F.3d 978, 981 (6th Cir. 2012) (citation omitted). "If the ill-treatment was motivated by something other than one of these five circumstances, then the applicant cannot be considered a refugee for purposes of asylum." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008); *see also Cruz*, 607 F.3d at 1150 (noting a person may qualify as a refugee on the basis of past persecution). Gomez bears the burden of establishing he meets the definition of refugee. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010).

**III.**

Gomez seeks asylum on the ground that he was persecuted as a member of a particular social group. 8 U.S.C. § 1101(a)(42)(A). The IJ found Gomez credible, a finding not challenged in this appeal. The IJ and the BIA nevertheless rejected Gomez's application on the basis that the proposed group – Guatemalan children under the age of fourteen – is not cognizable under the INA as a particular social group. The phrase "particular social group" is not defined in the statute. *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011). Generally, courts and the BIA have recognized a

4

particular social group if the group: (1) shares a common, immutable characteristic; (2) is sufficiently particularized; and, (3) possesses a certain level of social visibility. *See Bonilla-Morales*, 607 F.3d at 1137; *Al-Ghorbani v. Holder*, 585 F.3d 980, 994-95 (6th Cir. 2009). Additionally, we have hesitated to recognize groups that are "defined exclusively by the fact that its members have been subject to harm." *Kante*, 634 F.3d at 327.

Even assuming that he could demonstrate a "common, immutable characteristic" simply by reference to age, *see, e.g., Matter of S-E-G-*, 24 I & N Dec. 579, 582-84 (BIA 2008) (noting that age is not an "entirely immutable characteristic" but not precluding an "age-described particular social group"), Gomez fails to demonstrate his proposed group is sufficiently particularized. "The essence of the 'particularity' requirement . . . is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani*, 585 F.3d at 994 (citation omitted). As this court has recognized, "almost all of the pertinent decisions have rejected generalized, sweeping classifications for purposes of asylum." *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005); *see also Matter of S-E-G*, 24 I & N Dec. at 582 (noting that group must have "particular and well-defined boundaries"). The IJ observed that Gomez's proposed group would include, at some point, Guatemala's entire population.

We have rejected "tattooed youth" as a particular social group because it was "overbroad" and could not be seen "as constituting a collection of people closely affiliated with each other." *Castellano-Chacon v. INS*, 341 F.3d 533, 548-49 (6th Cir. 2003), *abrogated on other grounds* by *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Similarly, we rejected young, attractive Albanian women forced into prostitution as a particular social group. *Rfeshpja*, 420 F.3d at 555-56;

5

*see also Kalaj v. Holder*, 319 F. App'x 374, 376-77 (6th Cir. 2009) (rejecting "young, impoverished, single, uneducated women who risk kidnapping and forced prostitution" as particular social group). Because Guatemalan children under fourteen is not sufficiently particular, Gomez's argument that he suffered persecution based on his membership in it fails. *See also Ochoa v. Gonzalez*, 406 F.3d 1166, 1170-71 (9th Cir. 2005) ("Key to establishing a 'particular social group' is ensuring that the group is narrowly defined.") (citation omitted).

Gomez points to reports documenting the problem of child labor in Guatemala, as well as special and individualized protections for children under fourteen such as child labor laws, that he argues demonstrates the social visibility of his proposed group. Based on this information, Gomez appears to articulate, as he did in his brief to the BIA, a more narrowly-defined class: Guatemalan children "old enough to do manual labor but young enough not to demand greater work conditions." We need not decide whether this more narrowly-defined group is cognizable under the INA. *See, e.g., Kante*, 634 F.3d at 325 (explaining that a particular social group cannot be circularly defined by the fact that its members have been subject to harm); *Rreshpja*, 420 F.3d at 556 (same).

Although neither party discusses this aspect of Gomez's case, even assuming Gomez could demonstrate that Guatemalan child laborers are a particular social group, his claim would likely fail because he is no longer a member of it and, as he concedes, no longer maintains a fear of future persecution.[3] An applicant who establishes past persecution on account of a protected ground is entitled to a presumption of future persecution, *Abdurakhmanov*, 666 F.3d at 981, which the

---

[3]Gomez also does not argue that *former* Guatemalan child laborers have a well-founded fear of future persecution. *See, e.g., Lukwago v. Ashcroft*, 329 F.3d 157, 178 (3rd Cir. 2003) (noting that former enslaved Ugandan children qualify as a particular social group for purposes of determining a well-founded fear of future persecution).

government can overcome by demonstrating a "fundamental change in circumstances such that [the applicant] no longer has a well-founded fear of persecution in [his] country of nationality." *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004) (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A)). Gomez conceded at the merits hearing that circumstances have changed: as both the IJ and the BIA noted, Gomez is no longer a member of the proposed social group for which he argues and no longer maintains a fear of persecution on account of it. *Cf. Nue v. Holder*, 408 F. App'x 924 (6th Cir. 2011).

Gomez's claim for asylum is based on *Matter of Chen*. 20 I. & N. Dec. 16, 19 (BIA 1989). In cases premised on *Matter of Chen*, we have explained that "in rare instances, an applicant may be eligible for asylum where he 'has suffered under atrocious forms of persecution,' even where there is little likelihood of future persecution." *Hamida v. Gonzales*, 478 F.3d 734, 740 (6th Cir. 2007) (citation omitted); *accord Gjoni v. Holder*, 403 F. App'x 588, 590 (2d Cir. 2010). Gomez has not demonstrated that his persecution was so severe as to warrant asylum, *see, e.g., Hana v. Gonzalez*, 157 F. App'x 880, 884 (6th Cir. 2005), nor does his uncorroborated fear of gang violence entitle him to relief. Accordingly, his application for asylum fails.

**V.**

For the foregoing reasons, we **AFFIRM** the BIA's order.