NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0336n.06

No. 18-3893

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ALFREDO DAVID CASTRO-CASTANEDA, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent-Appellee. | ) | |

**FILED**
Jul 03, 2019
DEBORAH S. HUNT, Clerk

BEFORE:     ROGERS, GRIFFIN, and NALBANDIAN, Circuit Judges.

ROGERS, Circuit Judge.     Alfredo David Castro-Castaneda appeals the Board of Immigration Appeals' denial of his application for humanitarian asylum, arguing that the Board erred in determining that he did not suffer past persecution based on a protected ground. Castro-Castaneda claims that he experienced persecution in his native country of El Salvador on account of his membership in a proposed particular social group—namely, "young Salvadoran men abandoned by their parents." However, the proposed group is too amorphous to satisfy the "particularity" requirement for a particular social group, and Castro-Castaneda is accordingly not eligible for humanitarian asylum.

Castro-Castaneda is a twenty-two-year-old native and citizen of El Salvador. Both of Castro-Castaneda's parents immigrated to the United States when he was a young child, and Castro-Castaneda's sisters raised him in El Salvador with the help of bi-monthly payments from his father. For most of his life, Castro-Castaneda lived safely in El Salvador. However, that

changed in 2014 and 2015, when Castro-Castaneda allegedly experienced multiple threats and assaults at the hands of MS-13 gang members and police officers.

The first incident occurred near the end of 2014. A member of MS-13 approached Castro-Castaneda and threatened to harm him if he continued to sport long hair and wear Nike tennis shoes, because the shoes apparently signaled that Castro-Castaneda "belonged to [MS-13] or [ ] was trying to belong to them." Shortly afterwards, an MS-13 gang member known as "El Checo" assaulted Castro-Castaneda "without provocation." The encounter left Castro-Castaneda "terrified," but he did not report the attack to the police because he "wanted to forget what had happened." A couple months later, in March of 2015, Castro-Castaneda was assaulted again near a government building. Although he was uncertain whether the attackers "were associated with the MS-13 member who threatened [him] in the park," Castro-Castaneda "was wearing [his] Nike tennis shoes that day and at the time [he] thought that was why they were chasing [him]."

Castro-Castaneda's problems continued in October 2015, when "four men dressed as police officers" assaulted him and demanded information about El Checo and MS-13. The officers "accused [Castro-Castaneda] of being a member of the MS-13" gang, and they beat him before leaving him in the street. Castro-Castaneda attempted to file a report with El Salvador's National Civil Police ("PNC"). However, officers at the police station told him that he needed a parent to be present before a report could be filed. Later that same month, a group of MS-13 members who claimed to be associates of El Checo confronted Castro-Castaneda while he was with his girlfriend in a park. They threatened to kill Castro-Castaneda "for having gone to the police," and they proceeded to follow through on the threat by beating him. Castro-Castaneda eventually escaped, but the experience left him convinced that he had "no future" in El Salvador.

In response to these incidents, Castro-Castaneda left El Salvador and entered the United States in November 2015 without possessing a valid entry document. The Department of Homeland Security ("DHS") detained Castro-Castaneda, conducted a credible fear interview, and later released him from custody. DHS issued a Notice to Appear ("NTA") that charged Castro-Castaneda with being "subject to removal from the United States" under "Section 212(a)(7)(A)(i)(1) of the Immigration and Nationality Act . . . as [an] immigrant who, at the time of application for admission, [wa]s not in possession of a . . . valid entry document required by the Act." Castro-Castaneda conceded the charge of removability, and he applied for asylum, withholding of removal, and protection under the Convention against Torture ("CAT").

In his brief in support of his application for asylum, Castro-Castaneda argued that he had been persecuted in El Salvador on account of his membership in two proposed particular social groups: "young Salvadoran men abandoned by their parents"; and "young Salvadoran men presumed to be gang members." His application contained multiple articles discussing the pervasive gang violence in El Salvador, along with other articles providing a historical background on the country's relatively recent civil war. In addition, Castro-Castaneda attached a psychosocial evaluation from February of 2017, in which an expert concluded that Castro-Castaneda's "symptomatic distress levels are clearly defined as being in the clinical range" and diagnosed Castro-Castaneda with "Other Specified Trauma- and Stressor-Related Disorder."

An immigration judge granted Castro-Castaneda's application for humanitarian asylum. The immigration judge found that Castro-Castaneda "offered credible testimony," and determined that Castro-Castaneda "did suffer persecution in El Salvador" in light of his multiple beatings and the "lingering emotional injury" that resulted. With respect to the question of whether Castro-Castaneda "suffered past persecution on account of a protected ground," the immigration judge

determined that "young Salvadoran men presumed to be gang members" do not "constitute a cognizable particular social group." However, the judge concluded that the other proposed group—"young Salvadoran men abandoned by their parents"—did qualify as a particular social group. Based on this determination, the immigration judge granted Castro-Castaneda humanitarian asylum pursuant to 8 C.F.R. § 1208.13(b)(1)(iii)(B), while denying Castro-Castaneda's applications for withholding of removal and for protection under the CAT.

The Government appealed the immigration judge's decision, and the Board of Immigration Appeals reversed. The Board determined that the proposed particular social group of "young Salvadoran men abandoned by their parents" is "amorphous and does not establish an outer limit that provides a clear benchmark for determining who falls within the group." Furthermore, the Board concluded that the proposed group lacked the social distinction that is required to qualify as a particular social group under the INA. For these reasons, the Board reversed the immigration judge's grant of humanitarian asylum. Castro-Castaneda now appeals, arguing that he qualifies for humanitarian asylum because the proposed particular social group of "young Salvadoran men abandoned by their parents" is both particular and socially distinct.

Castro-Castaneda's proposed group is too amorphous to constitute a particular social group, and he is not eligible for humanitarian asylum for that reason. Humanitarian asylum is warranted in the "rare instances" in which "an applicant . . . has suffered under atrocious forms of persecution, even where there is little likelihood of future persecution." *Ben Hamida v. Gonzales*, 478 F.3d 734, 740 (6th Cir. 2007) (internal quotation marks omitted). Such an asylum claim accordingly requires the applicant to "demonstrate[] past persecution and [prove] that he or she is a 'refugee'" under the Immigration and Nationality Act ("INA"). *Matter of L-S-*, 25 I. & N. Dec. 705, 710 (BIA 2012). An individual qualifies as a refugee when he "is unable or unwilling to

return to [his] home country due to 'persecution or a well-founded fear of persecution on account of[, among other things,] membership in a particular social group.'" *Kalaj v. Holder*, 319 F. App'x 374, 376 (6th Cir. 2009) (quoting 8 U.S.C. § 1101(a)(42)(A)).

To constitute a particular social group, a proposed group must satisfy a "particularity" requirement, *see Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015), and Castro-Castaneda's proposed group of "young Salvadoran men abandoned by their parents" does not do so. The proposed group contains an ambiguous term, which makes it difficult to define clearly who belongs to the group. As the Government argues, "abandon" has multiple meanings, including: "[t]o withdraw one's support or help from, esp. despite a duty, allegiance, or responsibility"; "[t]o give up by leaving or ceasing to operate or inhabit, esp. as a result of impending threat"; and "[t]o surrender one's claim or right to." *Webster's II New College Dictionary* (2001). Castro-Castaneda does not explain which of these meanings applies, nor does he clarify whether parents must leave for a certain period of time before their young male children become members of the group. The proposed group could accordingly cover young Salvadoran men in a variety of situations, including young male orphans, young men who were neglected by their parents for several months, and young men who were adopted and raised by other families.

For this reason, the proposed group is too amorphous to satisfy the "particularity" requirement of a particular social group. "Particularity refers to 'whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons.'" *Umana-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013) (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009)). Satisfying that standard requires a particular social group to "be defined by characteristics that provide a clear benchmark for determining who falls within the group." *Matter of M-E-V-G-*, 26 I. & N. Dec.

227, 239 (BIA 2014). To do so, "[i]t is critical that the terms used to describe the group have commonly accepted definitions in the society of which the group is a part." *Id.* By these standards, Castro-Castaneda's proposed group is not clearly defined and fails to constitute a particular social group. Its reliance on the ambiguous term "abandoned" means that a wide variety of young Salvadoran men could claim membership in the group. Such a possibility is at odds with the particularity required of a particular social group, which precludes a proposed group from being "amorphous, overbroad, diffuse, or subjective." *Id.*

This determination is consistent with prior decisions from this circuit in which we rejected comparably amorphous proposed particular social groups for a lack of particularity. For example, in *Orellana v. Sessions*, 722 F. App'x 443 (6th Cir. 2018), we determined that the proposed particular social group of "children who are unable to leave their families" did not satisfy the particularity requirement, in part because the petitioner failed to explain the meaning of a term on which the definition of the proposed group relied. *Id.* at 449. We similarly rejected the proposed particular social group of "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" as "not cognizable under the INA" due to the group's lack of "sufficient particularity." *Umana-Ramos*, 724 F.3d at 673–74. In *Kante v. Holder*, 634 F.3d 321 (6th Cir. 2011), we determined that the petitioner's proposed particular social group of "women subjected to rape as a method of government control" was not particular in light of the group's "generalized and far-reaching nature." *Id.* at 327. Other insufficiently particular proposed particular social groups include "Guatemalan children under fourteen," *see Gomez-Guzman v. Holder*, 485 F. App'x 64, 67 (6th Cir. 2012), "young, impoverished, single, uneducated women who risk kidnapping and forced prostitution," *see Kalaj*, 319 F. App'x at 376, and "young (or those who appear to be young), attractive Albanian women who are forced into prostitution," *see Reshpja v.*

*Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005). Each of these proposed groups shares the very quality that precludes Castro-Castaneda's proposed group from satisfying the particularity requirement: a lack of clear definition that would permit the group to encompass a wide-ranging number of people from a variety of circumstances.

It is true that some of the proposed groups from our prior decisions are distinguishable from the proposed group in this case, inasmuch as they were circularly defined in terms of the persecution suffered by the group's members. *See, e.g., Kante*, 634 F.3d at 327; *Kalaj*, 319 F. App'x at 376–77. However, that distinction does not undermine the key point of similarity. The proposed groups from our prior decisions lacked the clear definition and discreteness required of a particular social group, and they were rejected for that reason. Castro-Castaneda's proposed group of "young Salvadoran men abandoned by their parents" contains the same flaw, and it accordingly does not qualify as a particular social group.

Because the proposed group's failure to satisfy the "particularity" requirement is dispositive of this appeal, we need not address whether the group satisfies the additional "social distinction" requirement for a particular social group. Castro-Castaneda has not shown that he suffered past persecution on account of membership in a particular social group, and he is therefore ineligible for humanitarian asylum.

We deny the petition for review.