*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0451p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ARVINDBHAI HARGOVANDAS PATEL,

> *Petitioner,*

*v.*

No. 06-3197

ALBERTO GONZALES,

> *Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A70 777 547.

Submitted: October 19, 2006

Decided and Filed: December 4, 2006

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

---

### COUNSEL

**ON BRIEF:** Barry L. Frager, FRAGER LAW FIRM, Memphis, Tennessee, for Petitioner. Allen P. Grunes, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

### OPINION

---

KAREN NELSON MOORE, Circuit Judge. Petitioner Arvindbhai Hargovandas Patel ("Patel") seeks review of the Board of Immigration Appeal's ("BIA") decision denying Patel asylum and voluntary departure under the Immigration and Nationality Act ("INA").

For the following reasons, we **DENY** Patel's petition with respect to his asylum claim, and **REMAND** his voluntary departure claim for a ruling by the BIA on whether Patel is entitled to voluntary departure.

### I. BACKGROUND

Patel is a native and citizen of India and practices the Hindu religion. While in India, Patel was an active member of Rashtriya Swayamsevek Sangh ("RSS") and Bajrang Dal. The RSS is "an

---

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

1

organization based on Hindu nationalism" that "espouses a return to what it considers Hindu values and cultural norms." Joint Appendix ("J.A.") at 128 (United States Department of State 2003 Country Report on Human Rights Practices for India). Bajrang Dal is the youth wing of RSS.

In the early 1990s, RSS was part of an effort to build a Hindu temple in the town of Ayodhya on a site on which a mosque stood. The site is holy to some Hindus, including Patel, because they believe it is the birthplace of Lord Rama. On December 6, 1992, the effort to reclaim the site culminated in the destruction of the mosque by a group of nearly one million people. After this incident, violence and riots erupted between Muslims and Hindus. Although the Immigration Judge ("IJ") doubted Patel's veracity, Patel testified that his efforts in building the temple had been restricted to fund-raising.

Patel testified that he was not present when the mosque was torn down, as he was incarcerated at the time. The IJ found that his detention was a result of heightened sectarian stress and tension in India. In fact, Patel stated that he had been arrested a total of three times by the local police, usually after Patel participated in some public gathering agitating in favor of construction of the temple. He stated that, on each occasion, he was arrested for a few days and was denied water (and possibly food) for one or two days.

Patel came to the United States in early 1993, claiming that he left India because of his involvement in the RSS, and because he was afraid that he would be killed by Muslims in retaliation for his efforts related to building the temple. Patel filed an application for asylum with the INS in 1993. Although India is majority Hindu, Patel claims that he is still subject to persecution by Muslims, that the area in which he is from is predominantly Muslim, and that he could not safely relocate to another part of India, both because the Muslims would find him, and because of language barriers. In support of this argument, he stated that a man from his village named Mr. Sundhi left the village and was subsequently murdered.

Patel's application was not referred to the Immigration Court until January 2004, and Patel's hearing before the IJ took place on September 3, 2004. The IJ found that Patel was not eligible for asylum, withholding of removal, or voluntary departure. The IJ based his decision to deny asylum on both statutory and discretionary grounds.

Much of the IJ's decision focused on the finding that, due to his participation in the destruction of the mosque, Patel was, himself, a persecutor. However, on appeal, the BIA decision affirmed and adopted all of the IJ's opinion except insofar as the IJ found that Patel was a persecutor.

"Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Thus, we examine the IJ's decision, except with respect to the finding that Patel was a persecutor.

## II. ASYLUM CLAIM[1]

### A. Standard Of Review

We have jurisdiction to review the BIA's asylum determination under 8 U.S.C. § 1252. Under the INA, the Attorney General may grant asylum to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

---

[1] Neither party makes any arguments with respect to the BIA's denial of withholding of removal.

membership in a particular social group, or political opinion . . . ."  8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A).  When an alien qualifies as a refugee, the IJ may exercise discretion to grant or deny asylum.  *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004).

Asylum analysis, therefore, "'involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the [IJ].'"  *Id*. (alteration in original) (quoting *Ouda v. INS,* 324 F.3d 445, 451 (6th Cir. 2003) (internal quotation marks and citation omitted)).  "At the first step, we review the IJ's factual determination as to whether the alien qualifies as a refugee under a substantial[-]evidence test," meaning that "findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Id*. (quoting 8 U.S.C. § 1252(b)(4)(B)).  At step two, "the discretionary judgment to grant asylum to a refugee is 'conclusive unless manifestly contrary to the law and an abuse of discretion.'"  *Id*. at 703 (quoting 8 U.S.C. § 1252(b)(4)(D)).

### B.   Patel Forfeited The Argument That The IJ's Discretionary Grounds For Denying Asylum Constituted An Abuse Of Discretion And Was Manifestly Contrary To Law

Patel argues that the IJ's decision denying him asylum was not supported by substantial evidence.  First, he argues that the IJ did not determine that Patel lacked credibility.  Second, he argues that the IJ "erred in finding that [he] did not have an objectively reasonable fear of persecution."  Patel Br. at 9.

What is most important here, however, is what Patel *does not* argue.  Patel does not argue that the IJ abused his discretion and reached a conclusion manifestly contrary to law in denying Patel asylum on discretionary grounds.  The IJ based his denial of asylum on both non-discretionary and discretionary grounds.  Specifically, the IJ found that Patel was "not worthy of a favorable exercise of discretion because of his activities in the group that did attempt to rip down the [m]osque and build the temple."  J.A. at 30 (IJ Opinion at 8).

Apparently, Patel's position is that, although the IJ explicitly stated that one of the alternate grounds for denying asylum was discretionary, the BIA did not adopt and affirm this ground, and, thus, the only ground on which Patel was actually denied asylum was non-discretionary.  However, there is nothing in the BIA decision indicating that it rejected the IJ's discretionary ground for denying asylum; therefore, Patel's argument is without merit.

Because Patel does not challenge the IJ's discretionary decision to deny asylum, Patel has forfeited this argument, and the discretionary ground for denying Patel asylum stands.  Thus, we deny Patel's petition for review of his asylum claim.  *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 525 n.4 (6th Cir. 2006) (stating that a party forfeits any argument which is merely stated, but for which the party makes no argument).

### III.  VOLUNTARY DEPARTURE CLAIM

### A.  Jurisdiction

According to 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review any judgment regarding the granting of relief under section . . . 1229c [the section regarding voluntary departure]."  However, according to § 1252(a)(2)(D), subsection (B) does not preclude this court from reviewing constitutional claims or questions of law.  Thus, while our jurisdiction is limited with respect to voluntary departure determinations, where voluntary departure raises a constitutional or legal question, we retain jurisdiction.  Patel makes two arguments with respect to voluntary departure.  The first argument is constitutional and the second is a question of law.  Therefore, we have jurisdiction to review both arguments and will examine each in turn.

## B.  Due Process

Patel claims that because the BIA expressly overturned the IJ's finding that Patel was a persecutor, and because the IJ relied solely on this finding in denying Patel's request for voluntary departure, the BIA was obligated to rule on Patel's briefed argument that he was entitled to voluntary departure.  According to Patel, the BIA's failure to address this argument was a violation of his right to due process.

Questions of law in a deportation order are reviewed de novo.  *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001).  "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing."  *Id.*  The Fifth Amendment prohibits "depriv[ation] of life, liberty, or property, without due process of law."  U.S. CONST. amend V; *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005).

To prevail, Patel first must show that the BIA's failure to consider his voluntary departure claim deprived him of a liberty interest.  However, we have previously held that "'[t]he failure to be granted discretionary relief [such as voluntary departure] does not amount to a deprivation of a liberty interest.'"  *Ali v. Ashcroft*, 366 F.3d 407, 412 (6th Cir. 2004) (alterations in original) (quoting *Huicochea-Gomez*, 237 F.3d at 700).  Because there was no deprivation of a liberty interest, Patel's due process claim is without merit.

## C.  The BIA's Failure to Exercise Discretion

Patel also raises the argument that the BIA failed to use any discretion, in that, while it adopted and affirmed the IJ's decision, it rejected the IJ's determination that Patel was a persecutor. Because the IJ based his decision to deny Patel's request for voluntary departure exclusively on the grounds that Patel was a persecutor himself, it was illogical for the BIA ultimately to affirm the IJ's decision in full.  The BIA Decision was silent on the question of voluntary departure.

The only way to make sense of the BIA Decision is to conclude that the BIA did not exercise *any* discretion whatsoever.  We conclude that, as a matter of law, when the BIA rejects the underlying reason for an IJ's decision to deny voluntary departure, and then makes no determination of its own on the voluntary departure issue, the BIA has not exercised any discretion.  Therefore, we remand to the BIA so that it may exercise its discretion on the question of whether Patel is entitled to voluntary departure.

## IV.  CONCLUSION

For the foregoing reasons, we **DENY** Patel's petition with respect to his asylum claim, and **REMAND** the voluntary departure claim for a ruling by the BIA on whether Patel is entitled to voluntary departure.