**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0519n.06
Filed: August 22, 2008

**No. 07-3337**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HUSEYIN PARLAK, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MICHAEL B. MUKASEY, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

_____

BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Huseyin Parlak, a native and citizen of Turkey, seeks review of an adverse order of the Board of Immigration Appeals ("BIA"), affirming the decision of an immigration judge ("IJ") denying petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons set forth below, we deny his petition for review.

I.

Petitioner Huseyin Parlak, born in 1966 to Kurdish parents, is a native and citizen of Turkey. He is one of ten children in a family of Alevi Muslims, one of the two major religious groups in Turkey (the other being the majority Sunni population). Huseyin graduated from university with a

mechanical engineering degree and worked in a textile factory. He was admitted to the United States on March 8, 1998, in Chicago, Illinois, as a nonimmigrant student on an F-1 visa and resided with his younger brother Ibrahim in Michigan. Huseyin discontinued his studies in 2003, with the intent of returning to Turkey, but changed his mind when he discovered that a warrant had been issued in Turkey for Ibrahim's arrest. On February 3, 2004, Huseyin filed an application for asylum, alleging that he suffered past persecution and feared future persecution in Turkey on account of his Kurdish ethnicity, his status as an Alevi Muslim, and his own political activities, as well as the separatist involvement of his brother Ibrahim, which Huseyin averred would be imputed to him by association.[1]

On April 9, 2004, the Department of Homeland Security issued a Notice to Appear, charging that Huseyin was removable under 8 U.S.C. § 1227(a)(1)(C), as a non-immigrant alien under 8 U.S.C. § 1101(a)(15), who failed to maintain or comply with the conditions of non-immigrant status under which he was admitted. Huseyin, through counsel, admitted to the factual allegations and

---

[1]A petition for review is currently pending in this court for Ibrahim Parlak's claims for asylum and other relief. *See Parlak v. Mukasey,* Case No. BIA-1:A71 803 930, Docket No. 05-4488. Materials related to Ibrahim's immigration proceedings were introduced as exhibits in the present case, in light of Huseyin's claim that he should be granted asylum based on his brother's political activities in Turkey. These documents reflect that, in 1990, Ibrahim was arrested in Turkey, convicted, and sentenced to death for his involvement in the 1988 murders of two Turkish soldiers. His sentence was reduced, and he was released in 1991. Ibrahim came to the United States, where he was granted asylum based on his membership in the National Liberation Front of Kurdistan. In 2003, Ibrahim learned that the Turkish government was pursuing extradition measures against him in an effort to extend his prison sentence stemming from the 1988 incident. He was resentenced in absentia, but the Turkish government thereafter cancelled the warrant. In 2004, Ibrahim filed a second application for asylum, withholding of removal, and relief under the CAT and thereafter was placed in removal proceedings. His claims for relief were denied, and he was found removable by the immigration court and the BIA. His petition for review awaits resolution by this court.

conceded removability as charged, but sought asylum, withholding of removal, protection under the CAT, and voluntary departure.

At the removal hearing held on June 15, 2005, Huseyin testified regarding two alleged instances of past persecution in Turkey. The first incident occurred in 1980, when Huseyin and other middle school students attended a demonstration protesting the Turkish government's treatment of the Kurdish and Alevi people. Huseyin claimed that he, along with other students, was arrested by the police, confined to a small cell, beaten and interrogated, and denied food and water. He was released after three days.

The second event purportedly occurred following a military coup in 1981, when military officers came to his village and searched several houses. The officers found a rifle in his home and used it as a pretext to arrest him. Other villagers were likewise detained. Huseyin testified that he was held for four days, kicked and beaten about his feet with a stick the size of a baseball bat, and questioned eventually about Ibrahim. He was released after authorities determined that he was too young to be held responsible for any offenses. Huseyin maintained that this incident was spurred by Ibrahim's notoriety as an activist.

Huseyin testified that in the period following his second arrest, the police would routinely come to his village to search the houses and check on the whereabouts of certain citizens. He admitted, however, that neither he nor his immediate family was subjected to further harm between his 1981 arrest and his departure to the United States in 1998. Once in the United States, Huseyin attended university classes until 2003, when he decided to return to Turkey. When he learned that

the Turkish government had reopened the case against his brother, he applied for asylum in the United States, allegedly out of fear that the Turkish government would persecute him based on his brother's actions. Huseyin acknowledged that the Turkish government cancelled Ibrahim's arrest warrant in 2004, but he nonetheless expressed fear at the prospect of returning to Turkey, claiming that the Turkish government still sought to punish Ibrahim and, therefore, him as well.

Huseyin testified that he was still in contact with his family, who lived peacefully in Turkey.[2] He admitted that neither he nor Ibrahim mentioned each other's arrests in their asylum applications. When asked why Ibrahim was not available to testify in the present case, Huseyin merely explained that the claims were different. He nonetheless continued to assert that he would be persecuted if returned to Turkey due to his Kurdish ethnicity and familial relationship to Ibrahim.

The sole witness called on Huseyin's behalf at the merits hearing was Dr. Liam Anderson, an assistant professor of political science and expert on Turkish affairs. Dr. Anderson testified that hostilities between the Turkish government and Kurdish separatists ceased in 1999 and, since then, the Turkish government has made favorable strides in terms of human rights reforms, motivated in part by Turkey's efforts to join the European Union. He noted that country conditions in Turkey, including the southeastern Kurdish region, had improved and that Kurds were proportionately represented in private, government, and military sectors. Dr. Anderson testified that the 2004 State Department Report on Turkey, introduced as part of the record, was "balanced" and accurate and

---

[2]Huseyin's father is deceased; his mother, three sisters, and three brothers continue to live in Turkey; two sisters live in Germany and Switzerland; and his brother Ibrahim, with whom petitioner resided, lives in Michigan.

indicated respect for human rights. He nonetheless opined that Huseyin might be at risk if he returned to Turkey, but was hard-pressed to determine the likelihood of future persecution against petitioner. Dr. Anderson estimated Huseyin's chance of future persecution, under current conditions, as a 55-75 percent certainty, but admitted that these margins were not precise. He opined that Ibrahim's political views and separatist activities would be imputed to Huseyin by the Turkish government.

Following the removal hearing, the IJ issued a written decision denying Huseyin's claims for asylum, withholding of removal, and relief under the CAT.[3] The IJ concluded that Dr. Anderson's testimony, "while enlightening as to the status of Turkey's potential accession to the European Union, offers little substantive information helpful to respondent's claim" and "confirms there is no way of knowing whether, and to what degree, respondent would be persecuted upon his return." The IJ further found that Huseyin lacked credibility:

> [Huseyin's] testimony was noticeably inconsistent regarding his personal experiences of persecution, attempting to focus on his brother whenever possible. In addition, [Huseyin] failed to include important details in his application which he mentioned in his testimony. With regard to the two instances of torture respondent claims to have personally suffered, the most questionable is his 1981 arrest. In his asylum application, [Huseyin] describes this event as simply being "captured" due to his relationship with his brother, and held for one week. See Exhibit 2, p. 5. However, in his testimony this event was shockingly different. He was arrested because the military found a gun in his home and was not questioned about his brother until after he had been held (and beaten) for at least three days. He was transferred and

---

[3]The IJ found as a preliminary matter that, although Huseyin's asylum application was not timely filed within one year after his arrival in the United States, the "changed circumstances" exception to the statutory deadline applied. *See* 8 U.S.C. § 1158(a)(2)(B) and (D); 8 C.F.R. § 1208.4(a)(4)(i) and (ii).

subsequently released. The description of this event in the application and the testimony is so dissimilar one readily and easily doubts the veracity of [Huseyin's] description.

[Huseyin] also failed to mention the conviction of his brother, Ibrahim, in his asylum application, though he admitted during his testimony that Ibrahim was in fact convicted. Further, [Huseyin] states in his application that the Turkish government is trying to extradite Ibrahim and is afraid it may try to extradite him as well. While Turkey may have sought to extradite Ibrahim at one point, that is no longer the case and [Huseyin] admitted he knew the warrant for his brother was cancelled. This should have relieved [Huseyin] of any fears of extradition. Also, [Huseyin] provided no explanation for his statement regarding why he believed the Turkish government would seek to extradite him. This statement makes little sense if [Huseyin] has none of the political affiliations his brother does, as the Turkish government would have no reason to extradite.

The IJ found the lack of corroborating evidence to be significant, noting that there was no evidence to support Huseyin's claim that he was arrested and tortured on two separate occasions. Notably, Ibrahim's 2004 asylum application, which was submitted as an exhibit by the government, made no mention of Huseyin's arrests, although it did note the arrest of other relatives. The IJ also questioned Huseyin's failure to support his claims with letters or the testimony of family members, particularly Ibrahim, who lived in Michigan. In sum, the IJ concluded that the documentation and testimony provided by Huseyin was insufficient to prove the incidents of alleged past persecution upon which he relied for his asylum application.

The IJ reasoned, alternatively, that even assuming arguendo that Huseyin was credible and the incidents actually occurred, these two events did not rise to the level of persecution so as to entitle Huseyin to the presumption of future persecution. Additionally, even if Huseyin suffered past persecution, positive changes in country conditions in Turkey following Huseyin's departure in 1998

rebutted any presumption of a well-founded fear of future persecution. The IJ found the 2004 State

Department Report on Turkey, which noted significant improvement in conditions for Kurds, to be

persuasive in this regard. Given that Huseyin resided peacefully in Turkey for over fifteen years after

his alleged arrests, and family members still reside there without apparent conflict with authorities,

the IJ concluded that Huseyin failed to show adequately that he had a reasonable fear of future

persecution if he returned to Turkey.

Finally, the IJ found that Huseyin was ineligible for humanitarian asylum pursuant to 8

C.F.R. § 1208.13(b)(1), as his account of past persecution, if true, was not sufficiently severe to

warrant relief. The IJ therefore denied Huseyin's application for asylum as a matter of discretion and

found him to be ineligible for withholding of removal and relief under the CAT for lack of the

requisite proofs.[4] The IJ turned down Huseyin's request for voluntary departure, citing his

---

[4]An alien may secure withholding of removal if he can show that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). The petitioner must establish a "clear probability of persecution" if forced to return to his home country, i.e., that "it is more likely than not" that he will be persecuted upon return to his home country. 8 C.F.R. § 1208.16(b)(2); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). This burden of proof is more stringent than that required to establish eligibility for asylum, *id.*; thus, an alien who fails to meet his burden of proof for asylum necessarily cannot meet the more stringent burden for withholding of removal. *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). An applicant who has not shown past persecution may be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country. 8 C.F.R. § 1208.16(b)(2).

To be eligible for protection under CAT, the applicant must establish "that it is more likely than not that he or she would be tortured [as defined in 8 C.F.R. § 208.18(a)(1)] if removed to the proposed country of removal." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(2)).

unauthorized and extended employment in the United States, and ordered petitioner's removal from the United States to Turkey on the charge contained in the Notice to Appear.

The BIA dismissed Huseyin's subsequent appeal for the reasons stated by the IJ and denied his request for voluntary departure. This petition for review followed. On May 11, 2007, we issued an order denying a stay of removal pending appeal, and Huseyin was removed to Turkey on May 14, 2007.

## II.

In his petition for review, Huseyin contends that the testimonial evidence and country condition information compel a finding of past persecution and a well-founded fear of future persecution. Huseyin argues that the IJ improperly sought to diminish the gravity of the persecution he suffered in the two incidents in the 1980's; he suggests that his multiple arrests and beatings in order to extract information about a sibling fall within the definition of persecution under the Immigration and Nationality Act.

Huseyin also takes issue with the IJ's adverse credibility findings, arguing that the cited inconsistencies between his testimony and asylum application are minor and not germane to his claim. Specifically, he complains that the IJ unfairly questioned his credibility on the ground that he focused more on his brother's case than his own, when, in fact, it was the government that introduced the majority of the exhibits regarding Ibrahim in a "concerted effort . . . to paint [Huseyin] as the kin of an alleged terrorist, rather than address his claim of having a fear of being perceived as exactly that by the Turkish government."

Lastly, with regard to the lack of corroborating evidence, Huseyin contends that the reason why Ibrahim did not include Huseyin's arrests in his asylum application was because he filed his asylum application in 1991, before Huseyin told him about the arrests in 2003. Petitioner argues that the IJ confused Ibrahim's first and second asylum applications. We find Huseyin's arguments to be without merit.

Asylum may be granted to an alien who establishes that he is a "refugee" – one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). To establish past persecution, an alien must show that he suffered harm, rising to the level of persecution, on account of an enumerated ground, and that his home country's government, or forces that the government is unable or unwilling to control, has committed such persecution. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(1); *Pilica*, 388 F.3d at 950-51. An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. *Pilica*, 388 F.3d at 950. An applicant for asylum bears the burden of demonstrating that "persecution is a reasonable possibility should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (internal citation omitted). A well-founded fear of persecution has subjective and objective components: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Pilica*, 388 F.3d at 950.

If an alien qualifies as a refugee, the IJ may exercise discretion to grant or deny asylum. We review the IJ's factual determination regarding whether an alien qualifies as a refugee using the substantial evidence test. *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006). The IJ's discretionary decision to grant or deny asylum is conclusive unless manifestly contrary to the law and an abuse of discretion. *Id*. (citing 8 U.S.C. § 1252(b)(4)(D)). To the extent the BIA adopted the IJ's reasoning, we review the IJ's decision. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

Although "'an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons. An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency.'" *Liti*, 411 F.3d at 637 (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)).[5] Further, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4)(D).

Applying these standards to the present circumstances, we conclude that the IJ's factual findings, including the adverse credibility determination, are supported by substantial evidence, and

---

[5]The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified as amended at 8 U.S.C. § 1158 (2006)), changed the standard governing credibility determinations and now provides that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). This revision, however, applies only to those applications for asylum, withholding of removal, or other relief filed on or after May 11, 2005, the effective date of this portion of the Act. Because Parlak applied for relief in February 2004, the new standard does not apply to the present case.

the IJ's resultant discretionary determination denying asylum and other relief was not an abuse of discretion.

The core of Huseyin's asylum claim is his fear that he will be persecuted in Turkey based on his brother's notoriety as a supposed terrorist. As the IJ noted, however, there were important inconsistencies, supported by the evidence of record, between Huseyin's application and his testimony at the merits hearing. In his application, petitioner stated that the reason for his arrest in 1981 was his familial connection to Ibrahim, but in his testimony, he stated that he and other villagers were arrested because of guns found in their homes – all of this occurring in the context of a recent military coup. Although petitioner claimed that the rifle was merely a pretext for his arrest, the fact that he was not singled out or questioned about his brother until he had been held for three days, and others were similarly arrested, detracts from his contention that he was arrested on account of his brother.

Likewise, Huseyin's failure to mention his brother's conviction in his asylum application provides cause to question his credibility and detracts from his claim that his arrests were linked to his brother. Conversely, Ibrahim detailed the arrests and detention of other relatives, but not Huseyin, in his 2004 asylum application. Contrary to Huseyin's claim that Ibrahim could not have known about his arrests because he filed his asylum application in 1991 and Huseyin told him about the arrests in 2003, it was Ibrahim's second asylum application, filed in 2004, that the IJ referred to in his opinion. There was no confusion on the part of the IJ with regard to this issue and no meaningful explanation from Huseyin for the omission. Moreover, although Huseyin admitted at

the hearing that he was aware that the warrant against Ibrahim had been cancelled by the Turkish government – thus diminishing his concerns about extradition and future persecution – he failed to mention this fact in his asylum application. And, despite the fact that Huseyin and Ibrahim lived and worked together in Michigan for several years, Ibrahim did not testify on Huseyin's behalf – a glaring absence under the circumstances.

In short, the factual findings of the IJ, including the adverse credibility determination and recognition of improved country conditions, are supported by substantial evidence. In light of the significant inconsistencies and key omissions noted with specificity by the IJ, coupled with Huseyin's failure to corroborate his claims despite reasonably available sources, we conclude that the IJ properly denied Huseyin's application for asylum for want of proof of either past persecution or a reasonable fear of future harm. Notably, Huseyin admitted that he lived in Turkey without incident from 1981 until 1998, and his immediate family members still reside peacefully in Turkey. There is simply no evidence that Huseyin was or currently is politically involved and will be persecuted under one of the statutorily protected grounds. Huseyin has failed to show that the record evidence compels a contrary conclusion.

Huseyin's remaining claims also must fail, for the reasons articulated by the IJ. We lack jurisdiction to review Huseyin's claim that the IJ improperly denied him voluntary departure. *Al-Najar v. Mukasey*, 515 F.3d 708, 716-17 (6th Cir. 2008) (citing 8 U.S.C. § 1252(a)(2)(B)(i)); *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630-31 (6th Cir. 2006).

III.

Therefore, for the foregoing reasons, we deny Huseyin Parlak's petition for review.