**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0334n.06

No. 09-4437

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 18, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| OSMAN BAH, | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC H. HOLDER, JR., Attorney | ) |
| General, | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**ON PETITION FOR REVIEW**
OF AN ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

**O P I N I O N**

Before:  **DAUGHTREY, MOORE, and CLAY, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  During the civil war in Sierra Leone in the 1990s, Osman Bah fled from Sierra Leone to Senegal after his parents were killed and he was detained for a few days by members of a rebel group in 1998.  He stayed in Senegal until 2000, at which time he came to the United States using a fake passport.  He applied for asylum under 8 U.S.C. § 1158; withholding of removal under 8 U.S.C. § 1231; and relief under the Convention Against Torture, but an Immigration Judge ("IJ") denied him all relief and ordered him removed from the country.  The Board of Immigration Appeals ("BIA") affirmed.  Bah now seeks review in this court.  For the reasons that follow, we **DENY** the petition for review.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner in this case, Osman Bah, was born in Freetown, Sierra Leone, in December 1970. A member of the Fulani ethnic group, Bah lived in Sierra Leone during the violent conflicts that took place there in the 1990s. He claims that it was these ethnically based conflicts—in which his parents were murdered and he was detained by rebel forces—that caused him to leave Sierra Leone in 1998. He fled first to Senegal, but in July 2000, he entered the United States using a fake passport; on December 8, 2000, he filed an affirmative application for asylum and withholding of removal. On April 18, 2003, Bah received a Notice to Appear.

During his hearing before an IJ on July 13, 2006, Bah testified about the events leading to his flight from Sierra Leone and his arrival in the United States. On direct examination, Bah said that his parents were killed in their house in June 1998. On the night they were killed, Bah had visited a friend; on Bah's return, he found his father shot to death in the living room and his mother dead in his parents' bedroom. Bah then went to see the Imam of the local mosque, just as his father had told him to do if anything ever happened to them. With help from the Imam, Bah's parents were buried the next day.

After the burial, Bah picked up his ID from the house and walked for two days to a town called Waterloo. In Waterloo, however, Bah heard that a ship would be in Freetown to take refugees to Senegal, so he returned to Freetown. As he was walking back, he was arrested by members of the Revolutionary United Front ("RUF") rebel forces, who wanted Bah to join them. Although he initially refused because he believed that they (or at least RUF rebels, generally) had killed his

parents, they put a gun to his chest and forced him to join them and carry their luggage. Bah stayed with the rebels for two or three days. Looking for a way to escape, Bah saw a lake and told the rebels that he was thirsty and wanted to get some water from the lake. Once he reached the lake, he crossed it and ran away.

Upon his return to Freetown, Bah took the ship to Senegal, where he received help from a local mosque. The Imam allowed him to stay at the mosque, and Bah began to work shining shoes. In all, Bah spent about two years in Senegal, during which time he married and had a daughter. In 2000, a friend named Mohammed told him that anyone without Senegalese ID would be arrested by the government and sent back to his or her country of origin. Mohammed also introduced Bah to an individual by the name of Abdoul Bah ("Abdoul"), who asked Bah for two pictures. After Bah gave Abdoul these pictures, Abdoul presented Bah with a passport containing Bah's pictures, but also with the name "Abdoul Bah" on it. Abdoul also told Bah to obtain a visa from the Embassy. Bah then flew to the United States with an individual named Mamadou Dia, to whom he gave the passport after he passed through customs so that Dia could bring the passport back to Senegal. Bah lived in Brooklyn, New York, at first, but he later moved to Cincinnati.

Toward the end of cross examination, the IJ questioned Bah. The IJ asked Bah if anyone had forced him to leave Senegal, to which Bah responded, "Yes, I was forced because the government make a statement on the radio saying (Indiscernible) Senegalese I.D. can be deported if arrested." App. at 300 (Removal Tr.). Regarding whether Bah simply wasn't aware that he could stay in Senegal legally because of his marriage, Bah stated, "If I knew that, if I could stay in Senegal I didn't

3

have any meaning to support myself in Senegal and that's why when I heard the radio statement I fled." *Id.* Bah then confirmed that he had obtained entry to the United States using a passport and visa that were not issued in his own name.

After closing statements from both sides and a brief recess, the IJ delivered his oral decision, in which he denied asylum, withholding of removal, and relief under the Convention Against Torture. Regarding asylum, the IJ found that Bah was not a truly credible witness, for several reasons that are not relevant to this decision. The IJ also believed that Bah had firmly resettled in Senegal prior to coming to the United States. Then, "[b]ased on the totality of the testimony and evidence presented in this case," the IJ found that Bah did not establish that he suffered past persecution on account of any protected ground. App. at 231 (IJ Decision). The IJ believed that "any mistreatment that [Bah] suffered was not in the view of the Court, or has not in the view of the Court, been clearly established to have taken place on account of a protected ground." *Id.* at 232. Instead, the IJ believed that Bah was apprehended by the rebels "simply to bolster the ranks of that rebel organization and not [on] account of any actual or imputed political opinion or the ethnicity of [Bah]." *Id.*

The IJ also found that Bah did not demonstrate a well-founded fear of future persecution and that "there does appear to have been fundamentally changed country conditions in Sierra Leone." *Id.* at 233. The IJ based his conclusion on a State Department Human Rights Report from 2005 (the most recent one available at the time), which indicated that the civil war in Sierra Leone ended in

2002, that several members of the rebel leadership had been prosecuted, and that about 271,000 refugees had been repatriated to Sierra Leone.

The IJ additionally denied Bah's application for withholding of removal, which has a higher bar than asylum, and for relief under the Convention Against Torture, because "there is nothing in the record evidence in review of the Court to suggest that there is any reasonable chance at all that [Bah] would face torture should he be returned to Sierra Leone today." *Id.* at 236. In sum:

> [Bah] did not in the view of the Court provide credible testimony or other evidence establishing any past torture and given current country conditions in the other record evidence I do not find it at all likely that he would receive torture in the future should he return to that country today. He certainly has not met his burden in establishing that the torture would be more likely than not and absent meeting that burden I must deny his application for withholding of removal pursuant to the CAT as well.

*Id.* at 236. The IJ therefore ordered that Bah "shall be removed from the United States to Sierra Leone on the charges contained in the Notice to Appear." *Id.* at 237.

The BIA affirmed the IJ's decision on October 30, 2009, relying mainly on several key aspects of the IJ's decision while refraining from reviewing some of the IJ's other findings. The BIA held that Bah "failed to meet his burden of proof for asylum, even if he testified credibly." App. at 2 (BIA Decision). First, Bah "failed to establish past persecution on account of political opinion, actual or imputed, or any other ground protected under the [Immigration and Nationality] Act." *Id.* Specifically, the BIA believed that Bah had not established a link between the murder of his parents and his own detention by the rebels, on the one hand, and his ethnicity or political opinion, on the other. The BIA also found that "the evidence presented by [Bah] suggests that the rebels' interest in him stemmed from their efforts to forcibly recruit him." *Id.* at 3. In addition, the BIA found that

5

the passage of ten years since Bah left Sierra Leone made it unlikely that Bah would be targeted by the rebels if he were to return. Lastly, the BIA agreed with the IJ "that there are materially changed country conditions in Sierra Leone such that [Bah] no longer has a well-founded fear of persecution from the RUF" because the civil war "has ended and members of the RUF have been tried for war crimes." *Id.*

Given these findings regarding asylum, the BIA declined to address the IJ's "additional findings regarding past persecution, firm resettlement, [and] discretion." *Id.* Furthermore, the BIA affirmed the IJ's denial of withholding of removal and relief under the Convention Against Torture. With respect to the former, the BIA found that the IJ properly denied relief because Bah failed to meet the lower burden of establishing asylum; with respect to the latter, the BIA found "that [Bah] failed to demonstrate that it is more likely than not that he will be tortured in Sierra Leone by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* Bah then filed a timely petition for review in this court.

## II. ANALYSIS

Bah makes three basic arguments before this court. In Bah's view, the IJ erred in finding (1) that country conditions in Sierra Leone had changed, (2) that Bah lacked credibility, and (3) that Bah had firmly resettled in Senegal prior to coming to the United States. All of these arguments relate to both asylum and withholding of removal, although the opinions of both the IJ and the BIA focus on asylum in great detail and deny withholding-of-removal relief only because asylum, which is

easier to satisfy, was not warranted.[1]  Before addressing these arguments, however, we note that the

parties dispute whether we should review the IJ's oral decision or the written decision of the BIA.

## A.  The BIA Did Not Issue A Summary Affirmance.

This court may review "final order[s] of removal." 8 U.S.C. § 1252(a)(1).  "When the Board

adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the

final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).  Where "the BIA d[oes]

not summarily affirm or adopt the IJ's reasoning and [instead] provide[s] an explanation for its

decision, we review the BIA's decision as the final agency determination." *Ilic-Lee v. Mukasey*, 507

F.3d 1044, 1047 (6th Cir. 2007).

Bah argues that the BIA opinion here amounts to a summary affirmance and that we should

therefore directly review the IJ's decision, rather than the BIA's decision.  The government responds

that the BIA did issue its own opinion.  We agree with the government on this point.  The BIA's

opinion contains substantive analysis, rather than a summary affirmance, and it does not simply

adopt the IJ's findings and decision wholesale; in fact, the BIA departs from the IJ in several key

respects.  For example, although the IJ found that Bah lacked credibility in the course of holding that

Bah failed to show past persecution, the BIA put the issue of credibility aside and held that Bah did

not show past persecution because he did not establish a nexus between his treatment and a protected

ground.  Furthermore, the IJ based his finding that Bah did not establish past persecution in part on

---

[1]Bah does not challenge the denial of relief under the Convention Against Torture in this appeal.

his belief that certain alleged abuse did not occur. The BIA, however, did not evince a disbelief that this abuse occurred; instead, the BIA limited its holding to the lack of a nexus between mistreatment and a protected ground. Lastly, contrary to the IJ, the BIA explicitly declined to consider other aspects of whether Bah suffered from past persecution, whether Bah had firmly resettled in Senegal, and whether discretionary relief was appropriate. The government is therefore correct that we must review the BIA's decision.

**B. The BIA's Decision Withstands Review.**

When reviewing a BIA decision on a denial of asylum, we evaluate under the substantial evidence standard the BIA's factual determinations regarding whether the applicant qualifies as a refugee. *Patel v. Gonzales*, 470 F.3d 216, 218–19 (6th Cir. 2006); *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). The BIA's determination regarding eligibility for asylum "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001). "In order to reverse the Board's factual determinations, we must find that the evidence not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* (internal quotation marks omitted; emphasis in original); *see also Elias-Zacarias*, 502 U.S. at 481 n.1 (same); 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled

to conclude to the contrary."). We review de novo the BIA's legal determinations and give deference to the BIA's reasonable interpretation of the immigration laws and regulations. *Lin*, 565 F.3d at 976.

All of Bah's remaining arguments before us relate to the IJ's decision; Bah fails to address in his appellate brief the correctness of the BIA's decision. Of Bah's three appellate arguments, the first two relate to issues on which the BIA did not state a holding: the IJ's findings that Bah was not credible and that Bah had firmly resettled in Senegal. The BIA reviewed only Bah's final appellate argument, relating to whether there were changed country conditions in Sierra Leone. For the reasons that follow, we believe that substantial evidence supports the BIA's finding of changed country conditions.

**1. Substantial Evidence Supports The BIA's Finding Of Changed Country Conditions In Sierra Leone.**

Asylum may be granted to any alien who is determined by the Secretary of Homeland Security or the Attorney General to be a "refugee," within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A). Section 1101(a)(42)(A) defines "refugee," in relevant part, as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

8 U.S.C. § 1101(a)(42)(A). To be eligible for asylum, an applicant must "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

9

A well-founded fear of persecution exists where "[t]he applicant has a fear of persecution . . . on account of" one of the protected grounds; "[t]here is a reasonable possibility of suffering such persecution if he or she were to return to that country"; and "[h]e or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear." 8 C.F.R. § 1208.13(b)(2)(i)(A)–(C).

Past persecution is relevant to the inquiry, because past persecution may entitle the applicant to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The presumption of future persecution may be rebutted, however, if the IJ finds, by a preponderance of the evidence, that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution . . . on account of" a protected ground. 8 C.F.R. § 1208.13(b)(1)(i)(A). A change in conditions in the applicant's country of origin is one type of "change in circumstances" under section 1208.13(b)(1)(i) that may rebut the presumption. *Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003) ("The INS may rebut that presumption by establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted upon return."). In addition, asylum may not be granted where an applicant has been "firmly resettled" in another country within the meaning of 8 C.F.R. § 1208.15. 8 C.F.R. § 1208.13(c)(2)(i)(B).

Withholding of removal is mandatory in situations in which "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race,

religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Unlike asylum, which requires only a well-founded fear of persecution, withholding of removal requires an applicant to "establish that his or her life or freedom *would be* threatened in the proposed country of removal on account of" a protected ground. 8 C.F.R. § 1208.16(b) (emphasis added). Evidence of past persecution on account of a protected ground will entitle the applicant to a rebuttable presumption of a finding that "the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). Without a showing of past persecution, however, an applicant must establish "that it is more likely than not that he or she would be persecuted on account of" a protected ground. 8 C.F.R. § 1208.16(b)(2). The "more likely than not" standard is an objective one—unlike the "well-founded fear of persecution" standard in asylum cases, which also contains a subjective element and is easier to satisfy. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430–31 (1987); *see also Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) ("An applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum.").

Here, the government provided a 2005 report from the State Department discussing then-current conditions in Sierra Leone. The BIA and the IJ both based their holdings regarding changed country conditions on this report. Specifically, the BIA "agree[d] with the Immigration Judge that there are materially changed country conditions in Sierra Leone such that [Bah] no longer has a well-founded fear of persecution from the RUF [rebel group]. Specifically, the civil conflict in Sierra

Leone has ended and members of the RUF have been tried for war crimes." App. at 3 (BIA Decision) (internal citations omitted).

In response, Bah points to evidence in the record that he claims shows that conditions have not changed enough to support the rebuttal of the presumption. Before the IJ, Bah introduced a printout from a website providing a brief history of the conflicts in Sierra Leone. This printout, which appears to be dated September 13, 2005, states that "[l]ess than a quarter of the 45000 combatants have surrendered their weapons at the designated assembly points in compliance with the disarmament program." App. at 347 (Exhibit 4). It also states that "[h]uman rights agencies in Sierra Leone report continued abuses and say that widespread banditry is increasing throughout the areas still controlled by the rebel factions." *Id.* at 348. Bah claims that this "suggests strongly that the conditions in Sierra Leone were not really changed at the time of Petitioner's individual hearing in 2006." Bah Br. at 21.

We do not believe that this evidence "compels" the conclusion that conditions in Sierra Leone are still such that, assuming Bah suffered past persecution, he may still be said to have a well-founded fear of future persecution if he is forced to return to Sierra Leone. *See Koliada*, 259 F.3d at 486; *Elias-Zacarias*, 502 U.S. at 481; 8 U.S.C. § 1252(b)(4)(B). Instead, we believe that the BIA's conclusion to the contrary is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Elias-Zacarias*, 502 U.S. at 481 (quotation marks omitted), namely the 2005 State Department report, which, as the IJ noted, states that 271,000 refugees have been repatriated and rebel leaders have been prosecuted. This negates any individualized fear of

persecution that Bah has claimed. *See Ouda*, 324 F.3d at 452. We therefore hold that substantial evidence supports the BIA's finding of changed country conditions in Sierra Leone. Consequently, we deny review regarding Bah's claims for asylum and withholding of removal.

### 2. We Need Not Address Bah's Remaining Arguments.

Given this holding, we need not and do not address either of Bah's remaining two arguments: that the IJ erred in finding both that Bah was not credible and that Bah had firmly resettled in Senegal. Moreover, even if resolution of these arguments were necessary to the disposition of this case, we could not grant relief because the BIA has not yet ruled upon these arguments. *See INS v. Ventura*, 537 U.S. 12, 16–17 (2002) (holding that where a statute places an issue "primarily in agency hands," a court of appeals should permit the agency to consider the issue before the court reviews the issue on appeal); *Gonzales v. Thomas*, 547 U.S. 183, 186–87 (2006) (same).

### III. CONCLUSION

For the reasons stated above, we **DENY** the petition for review.

13