NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0039n.06

No. 17-3740

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 22, 2018
DEBORAH S. HUNT, Clerk

LETICIA Y. ORELLANA; SANTOS Y. ORELLANA NUNES,

     Petitioners,

v.

JEFFERSON B. SESSIONS, III, U.S. ATTORNEY GENERAL,

     Respondent.

On Petition for Review from the United States Board of Immigration Appeals

**BEFORE: GUY, GIBBONS, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge**. Petitioners, Leticia Yeneth Orellana and Santos Ysidro Orellana Nunes, are Salvadorans who entered the United States without inspection in 2005 and 2002, respectively. They petition for review of the decision of the Board of Immigration Appeals, which denied their asylum and withholding of removal application. We deny the petition for review.

**I. Factual Background**

Petitioner Leticia Yeneth Orellana[1] was born in El Salvador. She experienced severe physical and sexual abuse at the hands of her father from ages seven or eight until she was 13,

---

[1] The petition of Santos Ysidro Orellana Nunes (Orellana's husband and co-petitioner) is

when her father began serving a five-year term of imprisonment in the United States. During the time her father was in an American prison, she married co-petitioner Nunes and moved out of her family home; Nunes went to the United States and petitioner began living alone. Petitioner's father eventually returned to El Salvador, moved back in with her mother, and began harassing petitioner at her home. As a result of her father's harassment, petitioner moved to the United States in 2005 and has been working "since [she] came here." Petitioner did not apply for asylum and withholding of removal until 2008, roughly three years after her arrival.

## II. Procedural History

The immigration judge denied petitioner's asylum application, citing the one-year limitations period that runs from the date of the immigrant's arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). Although that period can be tolled if the petitioner shows "extraordinary circumstances relating to the delay in filing an application," § 1158(a)(2)(D), the immigration judge held that petitioner's claim to tolling was "rebutted" by the facts that she "had the presence of mind" to use a fake identity to obtain employment during the limitations period and maintained such employment for four years.

The immigration judge also held, concerning petitioner's request for withholding of removal (and as an alternative basis for dismissing the asylum claim), that petitioner could not show membership in a particular social group as required by 8 U.S.C. § 1231(b)(3)(A).[2]

---

"derivative" of Orellana's, because he is her dependent. Nunes' history and circumstances are largely irrelevant to the instant petition. For simplicity, therefore, this opinion henceforth refers to Orellana as the sole petitioner.

[2] The immigration judge held that petitioner did not demonstrate "any nexus to one of the five factors under the Act." Under § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's [1] race, [2] religion, [3] nationality, [4] membership in a particular social group, or [5] political opinion." Petitioner only asserts entitlement to relief

According to the immigration judge, petitioner's first proposed social group — children who are unable to leave their families — "includes every human being on the planet" and was thus too vague. Petitioner's other proposed social group — women who have been sexually abused by their fathers — also was deemed "too vague and general." The judge also found that there was no evidence submitted that El Salvadoran law enforcement would be unable or unwilling to protect petitioner, particularly considering petitioner's ability to move to a more urban area.

Petitioner appealed the denial to the Board of Immigration Appeals ("BIA"), but while that appeal was pending, she moved to remand the matter to the immigration judge on the ground that her sister Sheni "also came to the United States and applied for asylum on exactly the same basis." Sheni's asylum application was timely and recommended for approval. The purpose of petitioner's remand request was to "determine the effect of Sheni's asylum grant on the outcome of [petitioner]'s application." The BIA granted the motion and remanded the case to the immigration judge on November 3, 2011.

On remand, petitioner conceded that she had no new evidence to offer, that a hearing was not necessary, and that remand had been requested to make "strictly a legal argument about whether or not the cases are in fact identical." Petitioner, however, offered no legal argument at the hearing and declined the judge's invitation to file a brief. In any event, the immigration judge noted that Sheni had not consented to the review of her file in petitioner's case, so it actually was not possible to conclude whether the cases were truly identical.

Rather than make any new determinations, the immigration judge certified the case to the BIA on January 24, 2012. The certification order identified three issues: (1) the authority of the

---

based upon her membership in a particular social group, so the remaining four factors are not relevant to this case.

immigration judge to consider Sheni's file without her consent; (2) the import of the facts underlying Sheni's application, given that her application was timely and petitioner's was dismissed because it was untimely; and (3) whether reconsideration should be directed to a particular basis for the immigration court's initial denial, given that it articulated three bases for denial. The certification concluded, "[f]or these reasons the Court will certify the case back to the [BIA] for clarification of the issues involved."

The BIA, however, did not address those questions of law when petitioner's case was certified to it. Instead, on June 15, 2017, it accepted certification but decided the case on the merits, affirming the immigration judge's original denial. It did so after acknowledging that, although it had remanded the case to the immigration judge due to petitioner's sister's asylum application, petitioner "declined to present any additional evidence and did not make any meaningful legal arguments regarding her eligibility for asylum." The BIA did not further discuss the immigration judge's reasons for certifying the case. This petition for review followed.

### III.  Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)).

"Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Id.* (citing *Morgan*, 507 F.3d at 1057).

Factual findings are reviewed under the substantial-evidence standard. *Id.* (citing *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007)). Such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## IV. Discussion

### A.     The BIA Had Jurisdiction

Petitioner first alleges that the BIA lacked jurisdiction under 8 C.F.R. § 1003.1(c) and (d)(3) to decide the appeal because the immigration judge's certification order — and, therefore, the BIA's jurisdiction — was limited to three issues needing "clarification." We disagree.

Petitioner claims that the BIA violated § 1003.1(c) "when it determined issues beyond those issues certified by the [immigration judge] to the [BIA]." The BIA did not offend 8 C.F.R. § 1003.1(c), which subsection provides:

> Jurisdiction by certification. [An] Immigration Judge . . . may in any case arising under paragraph (b) of this section certify such case to the Board. The Board in its discretion may review any such case by certification without regard to the provisions of § 1003.7 if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity [to] request oral argument and to submit a brief.[3]

The plain language of this regulation places no particular limit on the scope of the BIA's review of a certified case. Nor does the regulation contemplate a piecemeal certification (or, in turn, a piecemeal transfer of jurisdiction), instead referring to the immigration judge's ability to certify "such case" in its entirety.

---

[3] 8 C.F.R. § 1003.7 pertains to an affected party's right to receive notice of the certification and is not relevant to petitioner's claims.

This time relying on 8 C.F.R. § 1003.1(d)(3), petitioner similarly asserts that, "[b]y failing to address only the issues on the certification, the [BIA] impermissibly conducted its own evaluation of Petitioner's case without affording the Immigration Judge the opportunity to weigh[ ] the new evidence and conduct fact-finding." She cites no cases in support of this charge.

Two subsections in § 1003.1(d)(3) concern the immigration judge's findings of fact. Section 1003.1(d)(3)(i) provides that the BIA may not engage in de novo review of an immigration judge's findings of fact. Subsection (iv) provides that the BIA cannot engage in its own factfinding, and that "[a] party asserting that the [BIA] cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the [BIA] may remand the proceeding to the immigration judge . . . ."

The BIA did not violate any of these provisions by deciding the case without addressing the certified issues to petitioner's satisfaction. Petitioner alleges in conclusory fashion that the BIA conducted its own factfinding and does not argue that the BIA reviewed the immigration judge's findings of fact in violation of § 1003.1(d)(3)(i) or (iv). The immigration judge was not denied the opportunity to weigh new evidence or conduct factfinding when the case was remanded to it. The BIA acted consistently with § 1003.1(d)(3)(iv) by remanding the case to the immigration judge when petitioner requested it. In front of the immigration judge on remand, however, petitioner's counsel conceded that there was no need to take new evidence, and that the matter of petitioner's sister was essentially a question of law. As to that question of law, petitioner made no meaningful legal argument in her motion to remand and declined the opportunity to submit additional argument at the hearing on remand. The BIA thus did not

engage in impermissible fact-finding when it ultimately addressed all issues raised by petitioner's appeal.

Because petitioner offers no authority to the contrary, we hold that, in light of the immigration judge's certification, the BIA had jurisdiction to decide petitioner's case.

### B.        Petitioner's Asylum Application Was Untimely

Petitioner argues that the lower tribunals erred when they determined that she failed to demonstrate the "extraordinary circumstances" necessary to toll the one-year period within which an applicant must file for asylum after arriving in the United States under 8 U.S.C. § 1158(a)(2). Neither of petitioner's two arguments are adequately supported.

First, she implies that incorporating her sister's application might change her case's outcome, stating that the BIA "never answered the inquiry by the Immigration Judge as to how Petitioner's [sister's] asylum application and supporting evidence is relevant to this issue." Her only attempt to explain the relevance of such evidence, however, is that, "[a]lthough [her] sister filed a timely application, the experiences corroborate the trauma suffered by Petitioner."

The immigration judge and BIA did not reject petitioner's request for tolling because of a need for further corroboration. On the contrary, the immigration judge accepted petitioner's accounts as true, and the BIA relied upon petitioner's failure to "meaningfully challenge[ ]" the immigration judge's reasoning. The immigration judge observed that petitioner was able to use a fake identity to apply for and maintain a job, and that these facts belied her claims that she was too traumatized to timely apply for asylum. Whether the sister's application for asylum "corroborates" the severity of the trauma suffered by petitioner undermines neither the immigration judge's rationale nor the unrebutted facts on which it was based.

Independent of her sister's application, petitioner also alleges that the BIA "oversimplifies" her extreme trauma, and that her trauma is sufficient to justify tolling the one-year deadline. Without discounting the severity of the trauma that petitioner suffered, this argument must fail because it likewise does not address petitioner's ability to promptly obtain employment or otherwise impugn the immigration judge's reasoning.

The limitations period only bars petitioner's asylum claim; we therefore must separately address her withholding of removal application.

### C.      Petitioner's Withholding of Removal Application Failed to Establish A Particular Social Group

Petitioner claims that she can show a clear probability that she will be subject to persecution on account of her membership in a particular social group. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015) (citing 8 U.S.C. § 1231(b)(3)(A)). Members of a particular social group must share "a common, immutable characteristic"; the group must satisfy a "particularity" requirement, "meaning that the group can be described in terms sufficiently distinct such that the community would recognize it as a discrete class of persons"; and the purported group must have social distinction. *Id.* at 498; *see also Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 228 (BIA 2014).

Petitioner advances two particular social groups for consideration: "children who are unable to leave their families" and "Salvadoran girls."[4]

#### 1.      "Children who are unable to leave their families"

Petitioner explains that "children have legal and social constructs which prevent them from leaving their families. Age is a legal construct that prevented Petitioner from leaving

---

[4] Below, petitioner also claimed that "women who have been sexually abused by their fathers" was a particular social group. She abandons that claim here, acknowledging that "a group may not be defined by the persecution suffered." *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 242.

home . . . . [T]he social construct in El Salvador, similar to the treatment of marriage, views children as the property of their parents."

The immigration judge held that "children who are unable to leave their families" was "too vague and general to constitute [a] particular social group" because "[w]e were all children at one time and we were unable to leave our families because we could not live on our own." Furthermore, the judge held that members of that group do not share an "immutable characteristic" because the characteristic "mutate[s]," *i.e.*, people age out of childhood. The BIA affirmed on the first ground, stating that "[t]he group is amorphous and lacks definable boundaries," thus lacking particularity. The BIA declined to reach whether the putative group members shared a common, immutable characteristic.

We agree that the group "children who are unable to leave their families" is not sufficiently particularized. The fact that children cannot leave home is a near-universal reality of childhood. And petitioner fails to explain what it means to be the "property" of one's parents. To the extent that it refers to the reality that parents unilaterally make decisions about nearly every aspect of a child's life — the child's medical care, where they live, with whom they socialize, etc. — this, too, is a near-universal fact of childhood. Petitioner's putative particular social group could just as easily have been labeled, simply, "children."[5]

It is true that a particular social group may include vast swaths of the population, but the group "must not be amorphous, overbroad, diffuse, or subjective." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239; *see also Gomez-Guzman v. Holder*, 485 F. App'x 64, 67 (6th Cir. 2012) ("Because Guatemalan children under fourteen is not sufficiently particular, Gomez's argument

---

[5] Indeed, in petitioner's notice of appeal to the BIA, she identified herself as "a member of a particular social group consisting of children in El Salvador."

that he suffered persecution based on his membership in it fails."). We affirm the BIA's holding

that "children who are unable to leave their families" is amorphous and overbroad.[6]

### 2.      "Salvadoran girls"

Petitioner advanced the putative particular social group of "Salvadoran girls" in her pre-hearing brief filed with the immigration court in 2009. The government argues that petitioner failed to exhaust this argument when she declined to raise it on appeal to the BIA. In reply, petitioner does not claim that she preserved the argument on appeal; instead, she claims that the BIA "did not provide [her] the opportunity to present this argument when it erroneously addressed the first [immigration judge] decision instead of the issues on the certification."

Petitioner's argument ignores the fact that she appealed the immigration judge's decision. Her notice of appeal only identifies the putative particular social group of "children in El Salvador"; her brief to the BIA only identifies "a social group consisting of Salvadoran children"; and her supplemental brief, filed after the immigration judge's certification, only attacks the judge's rationale concerning the same putative group, rather than mentioning Salvadoran *girls*.

Petitioner had three opportunities to preserve her argument that "Salvadoran girls" make up a particular social group under 8 U.S.C. § 1231(b)(3)(A). The fact that the BIA did not address the issues concerning petitioner's sister's application did not deny petitioner the opportunity to preserve "Salvadoran girls" as a particular social group for consideration on appeal. Petitioner, therefore, has failed to exhaust her administrative remedies with respect to

---

[6] The fact that petitioner's alternative particular social group has a gender component — effectively halving the group that would be captured by "children who are unable to leave their families" — further supports our "case-by-case" analysis. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242.

this claim, and we cannot consider it.  *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) ("[W]e have jurisdiction to review only those claims as to which the alien has exhausted his administrative remedies, that is, those claims 'properly presented to the BIA and considered on their merits.'" (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004))).

The petition for review is **DENIED**.